1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

9
10
11

| | |
|---|---|
| J. GUADALUPE MARTINEZ-HIGUERA, | Case No. ED CV 15-00705-RAO |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**I.**

**INTRODUCTION**

J. Guadalupe Martinez-Higuera ("Plaintiff") challenges the Commissioner's denial of his applications for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") following an administrative law judge's ("ALJ") decision that he was not under a disability as defined in the Social Security Act. Administrative Record ("AR") . For the reasons stated below, the decision of the Commissioner is REVERSED and the action is REMANDED for further proceedings consistent with this Order.

/ / /

## II.

## PROCEEDINGS BELOW

On November 14, 2011, Plaintiff filed a Title II application for DIB, alleging disability beginning October 1, 2010 (his alleged onset date ("AOD")).  AR 26.  Plaintiff also filed a Title XVI application for SSI on November 14, 2011, alleging the same AOD.  *Id.*  Plaintiff's applications were denied initially on May 10, 2012, and upon reconsideration on November 8, 2012.  *Id.*  On November 21, 2012, Plaintiff filed a written request for hearing, which was held on June 24, 2013.  *Id.*  Represented by counsel, Plaintiff appeared and testified at the hearing with the assistance of a Spanish interpreter, as did an impartial vocational expert ("VE").  *Id.* at 26, 42.  On July 15, 2013, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act,[1] from his AOD through the decision date.  *Id.* at 34.  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review.  *Id.* at 1-3.  Plaintiff filed the instant action in this Court on April 10, 2015.  Dkt. No. 1.

The ALJ followed a five-step sequential evaluation process to assess whether Plaintiff was disabled.  20 C.F.R. §§ 404.1520, 416.920; *see also Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).  At **step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the AOD.  AR 28.  At **step two**, the ALJ found that Plaintiff has the following severe impairments: questionable nerve damage to the right upper extremity; disc bulging in the cervical spine; and hypertension.  *Id*.  At **step three**, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix

///

---

[1] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months.  42 U.S.C. § 423(d)(1)(A).

1.” *Id*. at 29 (citations omitted).  At **step four**, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to:

> [P]erform a range of medium work as defined in 20 C.F.R. 404.1567(c) and 416.967(c) which permits lifting 50 pounds occasionally and 25 pounds frequently with pushing and pulling within those weight limits; standing and/or walking for 6 hours and sitting for 6 hours.  He can frequently climb ramps and stairs and occasionally climb ladders, ropes and scaffolds; and frequently balance, stoop, kneel, crouch and crawl.  He has no restriction with the left upper extremity for reaching, but with the right upper extremity, he is limited to frequent reaching.  He can frequently perform gross manipulation (handling) and fingering with the right upper extremity and has no limits with the left upper extremity.  He can frequently feel with the right upper extremity.

*Id*. at 30.  Based on his RFC and the VE's testimony, the ALJ found that Plaintiff is capable of performing past relevant work as a maintenance worker and cleaner.  *Id.* at 33.  Accordingly, the ALJ did not proceed to **step five**, and instead, found that Plaintiff had not been under a disability from his AOD through the date of the ALJ's decision.  *Id.*

### III.

### STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  A court must affirm an ALJ's findings of fact if they are supported by substantial evidence, and if the proper legal standards were applied. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001).  "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue,* 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 882 (9th Cir. 2006)).  An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts

1    and conflicting clinical evidence, stating his interpretation thereof, and making

2    findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

3         "[T]he Commissioner's decision cannot be affirmed simply by isolating a

4    specific quantum of supporting evidence.  Rather, a court must consider the record

5    as a whole, weighing both evidence that supports and evidence that detracts from

6    the Secretary's conclusion." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir.

7    2001) (citations and internal quotations omitted).  "'Where evidence is susceptible

8    to more than one rational interpretation,' the ALJ's decision should be upheld."

9    *Ryan v. Comm'r of Soc. Sec.,* 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Burch v.*

10   *Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)); *see also Robbins,* 466 F.3d at 882

11   ("If the evidence can support either affirming or reversing the ALJ's conclusion, we

12   may not substitute our judgment for that of the ALJ.").  The Court may review only

13   "the reasons provided by the ALJ in the disability determination and may not affirm

14   the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630

15   (9th Cir. 2007) (citing *Connett v. Barnhart,* 340 F.3d 871, 874 (9th Cir. 2003)).

16                                       **IV.**

17                                 **DISCUSSION**

18        Plaintiff argues that the ALJ's decision is not supported by substantial

19   evidence that Plaintiff retains the RFC to perform medium exertion.  *See*

20   Memorandum in Support of Plaintiff's Complaint ("Pl. Memo.") at 3-11, Dkt. No.

21   23.  The Commissioner contends that this Court should uphold the ALJ's findings

22   which were based on Plaintiff's objective findings and upon an evaluation of his

23   symptoms.  *See* Memorandum in Support of Defendant's Answer ("Def. Memo.")

24   at 2-6, Dkt. No. 24.

25        A.  Applicable Law

26        A district court must uphold an ALJ's RFC assessment when the ALJ has

27   applied the proper legal standard and substantial evidence in the record as a whole

28   supports the decision.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

1    The ALJ must consider all of the medical evidence in the record and "explain in

2    [his or her] decision the weight given to . . . [the] opinions from treating sources,

3    nontreating    sources,    and    other    nonexamining    sources."    20    C.F.R.

4    §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii).   In making an RFC determination, the ALJ

5    may consider those limitations for which there is support in the record and need not

6    consider properly rejected evidence or subjective complaints.   *See Bayliss*, 427 F.3d

7    at 1217 (upholding ALJ's RFC determination because "the ALJ took into account

8    those limitations for which there was record support that did not depend on

9    [claimant's] subjective complaints").   The Court must consider the ALJ's decision

10   in the context of "the entire record as a whole," and if the "evidence is susceptible

11   to more than one rational interpretation, the ALJ's decision should be upheld."

12   *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (internal

13   quotation marks and citation omitted).

14         An ALJ does not need to adopt any specific medical source's RFC opinion as

15   his or her own.   *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear

16   that it is the responsibility of the ALJ, not the claimant's physician, to determine

17   residual functional capacity.");   2o C.F.R.   §§ 404.1546(c), 416.946(c) ("[T]he

18   administrative law judge . . . is responsible for assessing your residual functional

19   capacity.").   "The ALJ need not accept the opinion of any physician, including a

20   treating physician, if that opinion is brief, conclusory, and inadequately supported

21   by clinical findings."   *See Batson*, 359 F.3d at 1195; *Thomas v. Barnhart*, 278 F.3d

22   947, 957 (9th Cir. 2002).

23         B.   Relevant Facts

24         In April or May, 2010, Plaintiff fell and injured his right shoulder, elbow,

25   wrist, neck, and hand while at work.   AR 31, 760.   Plaintiff was seen by various

26   doctors and other sources.   *Id.* at 31.   A review of Plaintiff's voluminous medical

27   records shows that Plaintiff's primary pain complaint is pain in his right upper

28   extremity, particularly the right shoulder, elbow, wrist and hand, resulting from the

1    work injury he suffered in 2010.  *See, e.g., id.* at 43, 45, 230, 243, 420, 760, 790,

2    1124.  With respect to the medical records, a medical report prepared by Dr.

3    Frykman, who performed an orthopedic/neurological consultation in this matter,

4    noted that the medical records were approximately two-inches thick and required

5    two hours of professional time to review.[2]  *Id.* at 796.

6        In the ALJ's discussion of Plaintiff's RFC, the ALJ noted that an "overview

7    of the claimant's extensive medical record (most of which are in connection with

8    his workers' compensation claim) documented his complaints of neck and right

9    upper extremity pain" stemming from Plaintiff's work injury in May 2010:

> The record shows that the claimant has been examined or treated
> by a multitude of physicians, but notably, his treatment to date
> has been conservative in nature, to include medications, physical
> therapy, and shockwave treatment to his upper extremity.
>
> . . .
>
> The claimant's pain complaints have been investigated with a
> number of diagnostic studies.  These include an MRI of the
> cervical spine showing disc bulging at multiple levels (. . .).  A
> study of the right shoulder demonstrated evidence of supra and
> infraspinatus tendinosis, acromioclavicular joint disease and
> glenohumeral chondromalacia (. . .).  MRI of the right elbow
> demonstrated common flexor tendinosis and medical
> epicondylitis.  Also of record are EMG and nerve conduction
> studies of the upper extremities which contain inconsistent
> findings.  For example, a study in December 2010 indicated
> findings compatible with mild right carpal tunnel syndrome (. . .).

---

[2] Dr. Frykman examined Plaintiff on November 20, 2012, the same date of his
report and medical records review.  AR 787-798.  Dr. Frykman's report is not
discussed in the ALJ's decision.

However, a later study in September 2012 was entirely normal (. . .), while an electrodiagnostic evaluation completed in January 2013 showed evidence of right carpal tunnel syndrome (. . .). Whatever the etiology of the upper extremity complaints, the examination findings of record reflect that the claimant maintains good functioning of his hands and upper extremity.  While the physical examination findings of record have included tenderness, decreased sensation, slight swelling and erythema and a positive Phalen's sign in the right wrist (. . .), the claimant still maintains good mobility in his hands in terms of finger approximation and in making a fist and has shown no joint deformity or swelling; no thenar or hypothenar atrophy; intact reflexes; and normal motor strength rated at 5/5/ (. . .).

AR 31.

The ALJ's decision then proceeded to discuss the opinion evidence in the record.

The ALJ accorded no weight to the opinions of Dr. La, Plaintiff's chiropractor, and Dr. Mirzaians, a chiropractor who performed a functional capacity evaluation of Plaintiff.  AR 32.  Dr. La opined that Plaintiff was temporarily totally disabled; Dr. Mirzaians opined that Plaintiff should not lift more than 21 pounds. *See, e.g.*, AR 32, 264, 930.

The ALJ gave little weight to the opinion of Dr. Glancz, an orthopedic agreed medical examiner, who opined that Plaintiff was able to return to light work lifting up to 15 pounds and twisting with his right wrist.  AR 32.  Dr. Glancz's report, dated August 13, 2012, contained a four-page summary of Plaintiff's medical records that he reviewed as part of his evaluation of Plaintiff, records dating from October 2010 through March 2012.  *Id*. at 761-65.  After examining Plaintiff, Dr. Glancz concluded:

1

2

3

4

> It is my opinion however that this claimant is not temporarily disabled, and he is able to return to light work lifting up to 15 pounds and twisting with his right wrist until I receive the final reports.

5

*Id.* at 770.

6

7

8

9

10

11

12

In a supplemental report dated March 30, 2013, Dr. Glancz noted that he had received and reviewed reports from several other doctors and notes an inconsistency in the findings of two separate EMG and nerve conduction studies. AR 1124.  Dr. Glancz opined that  "[t]he only way to [] rectify the situation would be to order a repeat EMG and nerve conduction study by a mutually agreeable neurologist and accept his or her findings."  *Id*.  Dr. Glancz concluded that he was not changing his opinion as expressed in his earlier report.  *Id*.

13

In giving little weight to Dr. Glancz, the ALJ found:

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

> [Dr. Glancz] opined that the claimant was able to return to light work lifting up to 15 pounds and twisting with his right wrist [].  The existence of an impairment restricting lifting to this degree is given little weight as it is inconsistent with the specific clinical findings in his report.  In this regard, Dr. Glancz reported that the claimant had normal motor control of his shoulders, forearms, elbows, wrists and hands without evidence of weakness or atrophy in any muscle group; that perception to pinprick, light touch and vibration were without deficits; that peripheral pulses were equal and of normal amplitude; that there were no varicosities or skin rashes; that reflexes in the upper extremities were normal; and that there was slight pain over the right shoulder and elbow areas and a positive Tinel's sign.  In his later examination in March 2013, Dr. Glancz did note conflicting EMG and nerve conduction studies  to the claimant's upper

1   extremities of a normal study as opposed to one showing a right

2   carpal tunnel syndrome and appears to question the presence of a

3   true carpal tunnel syndrome.   This diminishes the overall

4   persuasiveness of his opinion.

5   AR 33.

6   The ALJ gave the greatest weight to Dr. MacArthur, consultative orthopedic

7   examiner, who assessed Plaintiff with a medium work RFC.   AR 33.   Dr.

8   MacArthur's report, dated April 26, 2012, indicates that he reviewed one medical

9   record for Plaintiff, namely, an x-ray report of the lumbar spine from Desert

10  Medical Center dated September 14, 2011.  AR 494.   After examining Plaintiff,

11  Dr. MacArthur concluded:

12  Right arm possible mild reflex sympathetic dystrophy due to

13  slight swelling and erythema of the right hand.  The claimant

14  does have hypersensitivity.   He does not have change in

15  temperature or moisture and there is definitely a non-organic

16  component to this right arm pain as well based on significant

17  mismatch between active [and] passive range of motion of the

18  right shoulder.  I would expect mild functional deficit from this

19  condition.

20  The claimant can lift and/or carry (including upward pulling)

21  50 pounds occasionally and 25 pounds frequently.

22  AR 498.

23  With respect to Dr. MacArthur's examination, the ALJ's decision

24  stated:

25  In April 2012, the claimant had a consultative orthopedic

26  examination with Dr. Robert MacArthur (. . .).  His examination

27  found slight swelling and erythema of the right hand but with

28  essentially normal motor strength in both hands.  The claimant

9

1    did not restrict the use of either hand during the evaluation and

2    was able to approximate his fingers, make a fist and manipulate a

3    pen without difficulty.  Dr. MacArthur assessed the claimant with

4    a generally medium functional capacity.

5   AR 33.  The ALJ gave Dr. MacArthur's opinion "the greatest weight, finding the

6   rationale expressed by this physician to be consistent with the treatment record, the

7   objective findings, the other opinion evidence, and the record as a whole.  As such,

8   it forms the basis for the claimant's residual functional capacity."  *Id*.

9       C.  Analysis

10      Plaintiff contends that in determining his RFC, the ALJ erred by adopting the

11  opinion of Dr. MacArthur, the Commissioner's consultative examiner, because Dr.

12  MacArthur diagnosed Plaintiff with reflex sympathetic dystrophy and lumbar spine

13  impairment and based his determination that Plaintiff could perform medium work

14  on these diagnoses.  Pl. Memo. at 6-7.  Plaintiff argues, first, that Dr. MacArthur

15  did not review the objective evidence, and second, that no other physician in the

16  record diagnosed or suggested a diagnosis of reflex sympathetic dystrophy.  *Id.* at 7.

17  Plaintiff also highlights that no other examining physician or source who rendered

18  an opinion on Plaintiff's functional capacity opined that Plaintiff is capable of

19  performing medium exertion.  *Id.* at 9.

20      Defendant responds that Plaintiff's focus on Dr. MacArthur's diagnosis is a

21  red herring, because the ALJ based his RFC findings upon Plaintiff's objective

22  findings and an evaluation of the extent of his symptoms, and not on a specific

23  diagnosis.  Def. Memo. at 2-5.

24      The Court finds that the ALJ's RFC assessment is not supported by

25  substantial evidence.  As noted above, Plaintiff's chief pain complaints arise from

26  the injury to his right shoulder, arm, elbow, wrist and hand.  Yet in reaching his

27  opinion of Plaintiff's functional capacity, Dr. MacArthur only reviewed one

28  medical report and that report, an x-ray of the lumbar spine -- a different area of

1   Plaintiff's body from where his chief pain complaints stem -- undercuts Dr.

2   MacArthur's assessment of Plaintiff's functional capacity.  The sparseness of the

3   medical record reviewed by Dr. MacArthur stands in contrast to the more detailed

4   and seemingly thorough review of Plaintiff's medical records performed by other

5   medical sources, including Dr. Glancz.

6          Further, Dr. MacArthur's opinion is the only opinion supporting the ALJ's

7   RFC assessment.  The ALJ rejected or gave little weight to the opinions of other

8   doctors or sources who opined that Plaintiff has a more restrictive RFC.  While the

9   ALJ was not required to give significant weight to Dr. La's and Dr. Mirzaians'

10  opinions as chiropractors, *see* 20 C.F.R. §§ 404.1513(a) & (d); *Gomez v. Chater*, 74

11  F.3d 967, 970-71 (9th Cir. 1996), *superseded by regulation on other grounds as*

12  *stated in Boyd v. Colvin*, 524 Fed. App'x 334 (9th Cir. 2013) (opinions from "other

13  sources" given less weight than "acceptable medical sources"), the functional

14  capacity assessment of Dr. Glancz, which the ALJ gave little weight, is the result of

15  clinical findings and a more thorough review of Plaintiff's medical records.  While

16  Dr. MacArthur's opinion is based on his clinical findings, it appears that Dr.

17  MacArthur did not review any of the medical records related to Plaintiff's right

18  upper extremity pain.  On this record, the Court cannot find substantial evidence to

19  support the ALJ's RFC assessment.

20         D.  Remand is Appropriate

21         The Court has discretion to decide whether to remand for further proceedings

22  or order an immediate award of benefits.  *Harman v. Apfel*, 211 F.3d 1172, 1175-78

23  (9th Cir. 2000).  Under the credit-as-true rule, the court should remand for an award

24  of benefits if three conditions are met: (1) the record is fully developed and further

25  administrative proceedings would serve no useful purpose; (2) the ALJ has failed to

26  provide legally sufficient reasons for rejecting evidence, be it claimant testimony or

27  ///

28  ///

1 | medical opinion; and (3) if such evidence were credited as true the ALJ would have
2 | to find the claimant disabled. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir.
3 | 2014).

4 |     The Court finds that the record is not fully developed with respect to the
5 | issue of Plaintiff's RFC assessment and that further administrative proceedings
6 | would be useful to allow the ALJ the opportunity to develop the record.[3]

**V.**

**CONCLUSION**

    IT IS ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter for further proceedings consistent with this Order.

    IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties

DATED:  December 30, 2015

_____
ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**

---

[3] Because the Court has determined that remand is appropriate, it need not reach the issue whether Plaintiff is disabled under the Medical-Vocational Guidelines (the "Grids"). However, the Court notes that the Commissioner's factual claim that Plaintiff can communicate in English because "at the hearing, he appeared without an interpreter" (Def. Memo. at 6) is unsupported by the record. The transcript of the hearing before the ALJ shows that Plaintiff used the services of an interpreter. AR 42 ("The oath was administered to the interpreter."). The record also contains additional information showing that Plaintiff is non-English speaking and requires the assistance of a Spanish interpreter. *See, e.g.*, *id.* at 245, 256, 787.